UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　　　v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>　　　　　　　　Defendant. | No.<br><br>**COMPLAINT** |

1　　　　The United States of America, by its undersigned attorneys, seeks to recover civil

2　penalties pursuant to 49 U.S.C. § 46301(a) for Southwest Airlines Co.'s multiple violations of

3　Federal Aviation Administration regulations, and states its claims as follows:

4　　　　　　　　　　　　　**JURISDICTION AND VENUE**

5　　　1.　　This Court has jurisdiction over the subject matter of this action pursuant to 49

6　U.S.C. § 46301, 49 U.S.C. § 46305, 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

7　　　2.　　Venue is proper in the Western District of Washington under the venue provision

8　for the recovery of fines, penalties, or forfeitures, 28 U.S.C. § 1395(a), and the general federal

9　venue provision, 28 U.S.C. § 1391(b), because most of the proposed civil penalties accrued in

Complaint - 1

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

this district, a substantial part of the events giving rise to the claims occurred in this district, and the defendant conducts business in this district.

## PARTIES

3. The Plaintiff is the United States of America, which has acted through its agency the Federal Aviation Administration ("FAA"). The FAA is authorized to regulate the operation of commercial aircraft within the United States pursuant to Title 49 of the United States Code.

4. The Defendant is Southwest Airlines Co. ("Southwest"), which at all times relevant to this action has held a certificate issued by the FAA under 14 C.F.R. Part 121 ("Part 121") authorizing it to engage in scheduled passenger carrying operations as a domestic air carrier.

## REGULATORY BACKGROUND

5. As part of its mission to ensure the safe operation of aircraft in the United States, the FAA requires that all civil aircraft in operation be "airworthy." *See* 14 C.F.R. § 91.7; *see also* 14 C.F.R. § 121.153(a)(2) ("no certificate holder [under Part 121] may operate an aircraft unless that aircraft . . . [i]s in an airworthy condition").

6. The FAA has also set forth specific requirements for scheduled passenger air carriers, such as Southwest. *See* 14 C.F.R. § 119.1(a) ("air carriers") and § 121.1(a) ("domestic, flag, and supplemental operations" of air carriers). Among these are requirements that direct air carriers such as Southwest must operate in compliance with "appropriate operations specifications." 14 C.F.R. § 119.5(g). *See also* 14 C.F.R. § 119.5(l) (prohibiting operation of aircraft pursuant to Part 121 that do not comply with an operations specification).

7. Southwest's Operations Specification D072 requires that its aircraft be maintained in accordance with a maintenance program, its Continuous Airworthiness Maintenance Program

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

1  ("CAMP"). Accordingly, Southwest violates 14 C.F.R. § 119.5(g) and § 119.5(l) if it operates
2  aircraft that are not maintained pursuant to its CAMP.

3      8.    Although an air carrier such as Southwest may delegate alterations or
4  maintenance work, such delegation does not relieve the air carrier of the responsibility to ensure
5  that maintenance is performed properly and that the aircraft is airworthy upon return to service.
6  *See* 14 C.F.R. § 121.363.

7      9.    The FAA issues Airworthiness Directives ("ADs"), which are legally enforceable
8  rules, when it determines that a product has an unsafe condition and that condition is likely to
9  exist or develop in other products of the same design. *See* 14 C.F.R. §§ 39.3, 39.5. Operating an
10 aircraft that does not meet the requirements of an AD makes an aircraft un-airworthy and is
11 against the law. *See* 14 C.F.R. § 39.7.

12     10.    In some cases, an AD may incorporate by reference a manufacturer's service
13 document. *See* 14 C.F.R. § 39.27.

14     11.    Aircraft operators must comply with an applicable AD unless they request and
15 receive FAA approval of an Alternative Method Of Compliance ("AMOC"). *See* 14 C.F.R.
16 §§ 39.9, 39.19. An AMOC is binding on aircraft operators with the same effect as an AD.

17     12.    Until December 29, 2010, large air carriers, such as Southwest, that violated the
18 FAA's regulations could be assessed civil penalties of up to $25,000 per violation. *See* 49
19 U.S.C. § 46301(a)(1). Beginning on December 29, 2010, this amount was increased to $27,500
20 per violation pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.
21 § 2461 (note), as amended by the Debt Collection Improvement Act of 1996, § 31001, Pub. L.
22 No. 104-134 (April 26, 1996). *See* 14 C.F.R. § 13.305 (setting forth revised civil penalty
23 amounts).

Complaint - 3

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

13.     In addition to any civil penalties assessed for incorrectly performed maintenance itself, a separate civil penalty may be assessed for each flight for which the aircraft operator was out of compliance. *See* 49 U.S.C. § 46301(a)(2). Accordingly, the calculation of the maximum civil penalty amount for each of the violations described below requires taking into account the number of aircraft that operated in violation of the regulations and the number of flights that each aircraft made while out of compliance.

## FACTS

14.     This case involves three separate types of maintenance violations by Southwest. The first two categories of violations relate to approximately forty-four un-airworthy aircraft that Southwest flew prior to and throughout 2009 whose fuselages had been improperly maintained by, first, improperly installing fasteners and, second, improperly supporting (shoring) the aircraft during maintenance. The third category of violations involves Southwest flying two aircraft in 2012 whose drain masts had been improperly altered.

*Maintenance Requirements Related to Fasteners and Shoring*

15.     The fuselage of a Boeing 737 aircraft is comprised of a patchwork of layered skin panels. The fuselage must be able to withstand extreme forces and massive variations in altitude and temperature, while supporting the immense weight of the aircraft and its contents.

16.     The FAA issued the following Airworthiness Directives related to maintaining the safe operation of the fuselages of Boeing 737 aircraft: 2002-07-08, 2003-14-16, 2004-18-06, 2005-17-19, and 2006-07-12.

17.     Southwest, which operates a fleet of Boeing 737s, was obliged to comply with these ADs or to obtain an AMOC.

Complaint - 4

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

1      18.     The FAA authorized Southwest to follow Boeing Service Bulletin 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

2   R2 as an AMOC to the ADs identified in paragraph 16.

3      19.     Southwest issued Aircraft Change Orders to Aviation Technical Services, Inc.

4   ("ATS") directing it to perform major alterations and maintenance on Southwest aircraft

5   pursuant to Boeing Service Bulletin 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 R2.

6      20.     ATS is an aircraft maintenance, repair, and overhaul company, with its principal

7   place of business in Everett, Washington. ATS routinely performs maintenance work for

8   commercial airlines such as Southwest.

9      21.     The Aircraft Change Orders issued to ATS are part of Southwest's CAMP, which

10   is part of Southwest's Operations Specification D072.

11      22.     Between 2006 and 2009, ATS performed maintenance pursuant to the Aircraft

12   Change Orders on Southwest aircraft. ATS did so improperly with regard to requirements

13   related to fasteners and shoring, which are described in further detail below, on approximately

14   forty-four of these aircraft. Although ATS performed the maintenance, Southwest is ultimately

15   responsible for ensuring that the maintenance was performed properly and that the aircraft were

16   airworthy upon return to service. *See* 14 C.F.R. § 121.363.

17      23.     Because of the improperly performed maintenance, when Southwest subsequently

18   operated these aircraft in passenger service it violated numerous FAA regulations. The FAA

19   now seeks civil penalties for the operation of the aircraft from September 3, 2009 onward.

20                          *Improperly Installed Fasteners*

21      24.     Boeing Service Bulletin 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 R2 required that individuals performing

22   aircraft maintenance use a particular type of sealant between skin panels and that they install all

23   parts within the applicable time and all permanent fasteners within the squeeze out time of the

Complaint - 5                                                              Department of Justice

sealant. This requirement related to maintaining the structural integrity of the fuselages. These instructions were repeated in the Aircraft Change Orders that were incorporated into the Southwest CAMP.

25. For approximately forty-four of the aircraft that it altered for Southwest, ATS installed the skin panels without installing all of the permanent fasteners within the squeeze out time of the sealant. Indeed, ATS only installed permanent fasteners in some of the fastener holes on the skin panels during the squeeze out time of the sealant. Doing so was a violation of Southwest's CAMP and Operations Specification D072, and made the aircraft un-airworthy.

26. Southwest operated the aircraft with the improperly installed fasteners in passenger service from the dates that they were returned to service (2006-2009) until September 26, 2009, when it requested and obtained from the FAA permission to use an AMOC, which allowed deviation from the requirement that all permanent fasteners be installed within the squeeze out time of the sealant. Southwest operated the non-compliant aircraft until September 26, 2009, even though the FAA alerted Southwest to its concerns about the maintenance violations by letter of investigation dated April 14, 2009.

*Improperly Shored Aircraft*

27. Boeing Service Bulletin 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 R2 also required that while performing maintenance, the fuselage of the aircraft be supported ("shored") in the specific manner set forth in Boeing Structural Repair Manual 51-50-02. This requirement related to safeguarding and maintaining the structural integrity of the aircraft during maintenance.

28. For approximately forty-four of the aircraft that it modified for Southwest, while performing maintenance, ATS did not comply with the shoring requirement set forth in Boeing

Complaint - 6

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

Structural Repair Manual 51-50-02. This was a violation of Southwest's CAMP and Operations Specification D072, and made the aircraft un-airworthy.

29. Southwest operated the aircraft that had been improperly shored in passenger service from the dates that they were returned to service (2006-2009) until October 16, 2009, when it requested and obtained from the FAA permission to use an AMOC, which allowed deviation from the previously required shoring procedures. Southwest operated the non-compliant aircraft until October 16, 2009, even though the FAA alerted Southwest to its concerns about the maintenance violations by letter of investigation dated April 15, 2009.

*Drain Masts*

30. As part of its ongoing efforts to ensure that aircraft operated in passenger service are safe, the FAA also issued Airworthiness Directive 2008-08-22, which required air carriers, including Southwest, to perform inspections of and modifications to aircraft gray water drain masts. Gray water drain masts allow waste water from the galley and lavatory sinks of aircraft to flow overboard. The AD addressed the concern that lightning strikes to aircraft could cause fires and electrical disruptions in the electrical components that are in and around drain masts.

31. AD 2008-08-22 required that the inspection and modifications of gray water drain masts be done in compliance with Boeing Service Bulletin 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. Boeing Service Bulletin 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 in turn specified requirements for relocation and connection of a case ground wire terminal as part of the gray water drain mast modifications.

32. Southwest issued Aircraft Change Orders for this maintenance and performed the required inspection and maintenance on two aircraft, Numbers N229WN and M412WN, on or around December 21, 2011 and January 4, 2012, respectively. These Aircraft Change Orders were part of Southwest's CAMP.

Complaint - 7

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

1  33.  On or around January 13, 2012, Southwest discovered that the case ground wire
2  terminal on these two aircraft had not been properly relocated and connected.

3  34.  Nevertheless, Southwest continued to operate these two aircraft in passenger
4  service without correcting the error until on or around January 17, 2012.

5  35.  By letter of July 28, 2014, the FAA notified Southwest of the alleged regulatory
6  violations arising from the improper maintenance relating to fasteners, shoring, and drain masts
7  and proposed civil penalties. The parties were not able to reach a compromise on the proposed
8  civil penalties.

9  **COUNT 1 - FASTENERS**

10  36.  Plaintiff incorporates by reference paragraphs 1-26 and 35, above. These events
11  give rise to the following regulatory violations:

12  37.  By failing to comply with the applicable AMOC, and thereby failing to comply
13  with five ADs, Southwest violated 14 C.F.R. § 39.7, which states that "[a]nyone who operates a
14  product that does not meet the requirements of an applicable airworthiness directive is in
15  violation of this section."

16  38.  By returning aircraft to service after failing to comply with ADs, Southwest
17  operated aircraft in an unsafe condition, and therefore in an un-airworthy condition in violation
18  of 14 C.F.R. § 121.153(a)(2) ("no certificate holder may operate an aircraft unless that aircraft
19  . . . [i]s in an airworthy condition and meets the applicable airworthiness requirements of this
20  chapter.").

21  39.  By failing to comply with the requirements of its CAMP (which was set forth in
22  Operations Specification D072), as specified in Boeing Service Bulletin 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 and the
23  applicable Aircraft Change Orders, and subsequently operating the aircraft, Southwest violated

Complaint - 8

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

14 C.F.R. § 119.5(g) ("No person may operate as a direct air carrier . . . in violation of . . . appropriate operations specifications") and 14 C.F.R. § 119.5(l) ("No person may operate an aircraft under . . . Part 121 of this chapter . . . in violation of . . . operations specification.").

40. Pursuant to 49 U.S.C. § 46301(a), each flight operated in violation of FAA regulations was a violation for which the Defendant is liable to the United States for civil penalties of not more than $25,000.

## COUNT 2 - SHORING

41. Plaintiff incorporates by reference paragraphs 1-23, 27-29, and 35, above. These events give rise to the following regulatory violations:

42. By failing to comply with the applicable AMOC, and thereby failing to comply with five ADs, Southwest violated 14 C.F.R. § 39.7.

43. By returning aircraft to service after failing to comply with ADs, Southwest operated aircraft in an unsafe condition, and therefore in an un-airworthy condition in violation of 14 C.F.R. § 121.153(a)(2).

44. By failing to comply with the requirements of its CAMP (which was set forth in Operations Specification D072), as specified in Boeing Service Bulletin 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 and the applicable Aircraft Change Orders, and subsequently operating the aircraft, Southwest violated 14 C.F.R. § 119.5(g) and 14 C.F.R. § 119.5(l).

45. Pursuant to 49 U.S.C. § 46301(a), each flight operated in violation of FAA regulations was a violation for which the Defendant is liable to the United States for civil penalties of not more than $25,000.

Complaint - 9

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

## COUNT 3 – DRAIN MASTS

46. Plaintiff incorporates by reference paragraphs 1-23, and 30-35, above. These events give rise to the following regulatory violations:

47. By failing to comply with AD 2008-08-22 or an AMOC to that AD, Southwest violated 14 C.F.R. § 39.7.

48. By failing to follow required maintenance directives properly, Southwest violated 14 C.F.R. § 43.13(a) ("Each person performing maintenance, alteration, or preventive maintenance on an aircraft . . . shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual.").

49. By returning the aircraft to service in their improperly altered state, the aircraft no longer complied with their "type certificate," and were therefore not airworthy. *See* 49 U.S.C. § 44704(d). Operating the aircraft in this state violated 14 C.F.R. § 121.153(a)(2).

50. By failing to comply with the requirements of its CAMP (which was set forth in an operations specification) and subsequently operating the aircraft, Southwest violated 14 C.F.R. § 119.5(g) and 14 C.F.R. § 119.5(l).

51. Pursuant to 49 U.S.C. § 46301(a) and 14 C.F.R. §13.305(d) (authorizing inflation adjustment pursuant to 28 U.S.C. § 2461 (note), as amended by the Debt Collection Improvement Act of 1996, § 31001, Pub. L. No. 104-134 (April 26, 1996)), each flight operated in violation of FAA regulations was a violation for which the Defendant is liable to the United States for civil penalties of not more than $27,500.

## RELIEF REQUESTED

WHEREFORE, the United States of America prays that this Court enter judgment against the defendant, Southwest Airlines Co., as follows:

Complaint - 10

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188

1       A.    Assess the full civil penalties and interest as provided by law; and

2       B.    Grant the plaintiff such further relief as the Court may deem just and equitable,

3 including the plaintiff's costs.

4       Respectfully submitted this 3rd day of November, 2014.

JOYCE R. BRANDA
Acting Assistant Attorney General

ANNETTE L. HAYES
Acting United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director
Federal Programs Branch

*/s/*

ROBIN F. THURSTON
Trial Attorney (Illinois Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
Phone: (202) 616-8188
Fax:    (202) 616-8470
Email: robin.f.thurston@usdoj.gov
<u>Mailing Address:</u>
Post Office Box 883
Washington, D.C. 20044
<u>Courier Address:</u>
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001

DAVID R. EAST, WSBA #31481
Assistant United States Attorney
United States Attorney's Office
Phone: 206-553-7970
Fax:    206-553-4073
E-mail: david.east@usdoj.gov
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271

*Counsel for Defendants*

Complaint - 11

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
(202) 616-8188